IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MARY BETH BUSH, )
)
    Plaintiff, )
)
vs. ) Case No. **2:16-CV-02675-JWL-GEB**
)
)
CITY OF GARDNER, )
)
    Defendant. )

## AFFIDAVIT OF CHERYL HARRISON-LEE

I, Cheryl Harrison-Lee, being duly sworn, do hereby state as follows:

1. I am of legal age and of sound mind and body and otherwise capable of making this affidavit.

2. The facts set forth below are based on my personal knowledge and are true to the best of my information, knowledge, and belief.

3. I am an African-American woman, born in April of 1962 and am currently 55 years of age. At the time Mary Bush's employment with the City of Gardner, Kansas ended, I was a little over one month from turning 53 years of age.

4. I am not related to former Gardner City Council President Kristina Harrison.

5. As City Administrator for the City of Gardner, I am the chief administrative assistant to the Mayor and generally oversee and coordinate the operation sf the City of Gardner and its departments. I am the administrative officer of the City of Gardner Government as well as the personnel officer of the City of Gardner.

6. Since becoming City Administrator, I have personally made the decision regarding the selection of sixteen people to fill various positions within the City of Gardner. Among the individuals I have decided to hire, or recommended to the City Council that they be hired, are: (1) Brian Faust, (2) Michael Hall, (3) Gerald Cullumber, (4) James Pruetting, (5) Greg Eytcheson, (6) Alan Abramovitz, (7) Anne Forrester, (8) Gonzalo Garcia, (9) Scott Garrie, (10) Michael Kramer, (11) Daneeka Marshall-Oquendo, (12) Larry Powell, (13) Anne Clement, (14) Matthew Wolff, (15) Amy Waller, and (16) Leslie Quillen.

7. Of the individuals identified in Paragraph 7, fourteen are Caucasian, and only Daneeka Marshall-Oquendo is African-American.

Ensz & Jester, P.C.   Summary Judgment Exhibit  **2**

8.  I have not personally made hiring decisions relating to Engineer Technician positions for the City of Gardner.

9.  At the time I was informed that Mrs. Bush had filed a complaint, there were no other African-American employees that reported directly to me.

10. None of the following individuals have alleged I discriminated against them on the basis of age or race: (1) Michael Hall; (2) Gerald Cullumber; (3) Leslie Quillen; (4) Amy Kynard; (5) Jim Sherman; (6) James Moore; (7) Laura Gourley; (8) Jeff Stewart; (9) Brian Faust; (10) Lisa Wilms; (11) Katie Asbury; (12) Jeanne Koontz.

**Promotion of Mary Bush to Administrative Services Manager**

11. At the time I promoted Mrs. Bush to Administrative Services Manager I thought Mrs. Bush would succeed in handling the additional authority because she demonstrated strong interpersonal skills and the ability to coordinate various activities and events for community partners. However, I had only been working with Mrs. Bush for around six months when I promoted her. So, I had limited time and opportunity to evaluate Mrs. Bush's abilities and skillset.

12. During Mrs. Bush's employment, I encouraged her to take full advantage of learning opportunities to expand her skillset. As part of that, Mrs. Bush and I attended the Society of Human Resource Management Conference in Orlando, Florida on June 22-25, 2014.

13. After the Society of Human Resource Management Conference, I expressed to Mrs. Bush the importance I placed on having a relevant college degree for the responsibilities being performed, or otherwise taking full advantage of other training and educational opportunities.

**Pay Review**

14. After Mrs. Bush submitted information related to a pay review/salary study she conducted using Mid-America Regional Council data, I had some concerns about the information provided and asked my Management Analyst, Matthew Wolff, to look at the information provided Mrs. Bush provided. After looking at the information, Matthew Wolff informed me he also had concerns that Mrs. Bush was not using comparable cities and positions in her pay review/salary study. Because Matthew Wolff had similar concerns, I believed I could not rely on the information provided by Mrs. Bush when presenting or discussing budgetary issues with the City Council. Subsequently, I decided to proceed with obtaining an outside consultant to do a full pay and compensation study.

**Information Technology Request for Proposal**

15. In the spring of 2014, Mrs. Bush coordinated the preparation of a request for proposal seeking Information Technology services for the City of Gardner. Mrs. Bush enlisted the help of the City of Gardner's then-Information Technology vendor, AOS, to prepare the

2

request for proposal. Only one proposal was received and it was from the same vendor, AOS, who helped prepare the request for proposal. I was disappointed the only proposal received came from the same company who Mrs. Bush had prepare the proposal. As a result, I put the project on hold. And, because I lacked confidence in Mrs. Bush's judgment and ability to see the project to a successful completion, I personally contacted other governmental entities to inquire about their Information Technology services and consultants.

### Misclassification of City Clerk

16. In or around August 2014, the United States Department of Labor audited the City of Gardner, I believe, because of a complaint filed by the former City Clerk alleging she had not been properly paid overtime.

17. The Department of Labor concluded that the City Clerk position had been misclassified.

18. During the time for which the City Clerk was misclassified, Mrs. Bush was the Human Resources Manager and responsible for the classification of employees under the Fair Labor Standards Act and I was upset Mrs. Bush had not properly classified that position.

### Failure to Verify Education Credentials

19. In the fall of 2014, between August and November 20, 2014, during the Department of Labor audit, I learned that the human resources division, managed by Mrs. Bush, had not verified that a then-employee, Travis Hulse, had the degree he stated he had on his resume.

20. It upset me greatly to learn that human resources staff, managed by Mrs. Bush, was not verifying selected applicants' education credentials and that a person who had misstated his credentials on his resume had been hired, and then later promoted.

### Recruitment of Network Administrator and Human Resources Supervisor

21. After we selected a candidate to hire for the Network Administrator position, I then moved that position to report directly to me instead of the Administrative Services Manager as part of my plan to reorganize the administrative department and eliminate the Administrative Services Manager position.

22. In the later part of 2014 and beginning of 2015, Gardner was recruiting to fill the Human Resources Supervisor position, which had been created for the 2015 budget.

23. On January 15, 2015, Mrs. Bush and I interviewed candidates for the Human Resources Supervisor position. I was very pleased with the quality of candidates we interviewed, particularly Alan Abramovitz. After the January 15, 2015 telephone interviews, I developed a preference for Mr. Abramovitz.

24. Because of the quality of candidates we interviewed, I knew that after the City filled the Human Resources Supervisor position the Administrative Services Manager position would no longer be necessary because the Network Administrator already reported to me, the Human Resources Supervisor could oversee the human resources and risk management duties, and the other two positions reporting to the Administrative Services Manager required little supervision and could easily revert back to the previous reporting structure in place prior to the creation of the Administrative Services Manager position.

25. The in-person interviews for the Human Resources Supervisor position were conducted on January 26, 2015, beginning at 9:30 a.m.

26. After the January 26, 2015 interviews, I decided to hire Alan Abramovitz, who I had been impressed with during both the the January 15, 2015 telephone interview, as well as the in-person interview.

**Police Chief Interview Scenarios**

27. In January 2015, the City of Gardner was in the process of recruiting a new police chief.

28. The in-person interviews for the Police Chief candidates were set to begin at around 8:00 a.m. on January 23, 2015.

29. I had asked Mrs. Bush to prepare some interview scenarios for the police chief candidates to work through during their interviews.

30. I did not receive the scenarios until around 4:30 p.m. on January 22, 2015, and upon reviewing them, learned they had been repurposed from prior scenarios used in recruiting for a different position.

**January 23, 2015 Meeting Discussing Elimination of the Administrative Services Manager Position.**

31. On January 23, 2015, Mayor Morrow, Council President Kristina Harrison and I, along with others, participated in the Police Chief interviews to fill the Police Chief position at the City of Gardner.

32. After the interviews were over, Mayor Morrow, Council President Kristina Harrison, and I continued to meet in the conference room near Mrs. Bush's office. We discussed the decision and plan to move forward with eliminating the Administrative Services Manager position. During the meeting, I explained to Mayor Morrow and Council President Harrison that we had hired a Network Administrator who was reporting directly to me, and the Human Resources Supervisor candidates were very qualified and could oversee Gardner's human resources functions, and that the Administrative Services Manager position would no longer be necessary.

4

FURTHER AFFIANT SAYETH NAUGHT.

*Cheryl Harrison-Lee*
Cheryl Harrison-Lee

STATE OF KANSAS    )
                   )
COUNTY OF JOHNSON  )

Subscribed and sworn to before me this 16 day of August, 2017.

*Lisa Lanio*
Notary Public

My Commission Expires:

LISA LANIO
My Appt. Exp. 10-31-2020
NOTARY PUBLIC STATE OF KANSAS

5