# MARY BETH BUSH

**vs.**

# CITY OF GARDNER

---

# KATIE ASBURY

*July 26, 2017*

---

Ensz & Jester, P.C.
Summary Judgment Exhibit
**16**




CHRISTOPHER VIDEO & REPORTING
1100 Main Street, Suite 2190 - Kansas City, MO 64105
816.471.7800 www.christophervideo.com 816.471.7998 (Fax)

IN THE UNITED STATES DISTRICT COUNTY FOR THE DISTRICT OF KANSAS

MARY BETH BUSH,

Plaintiff,

-vs- CASE NO: 2:16-CV-02675-JWL-GEB

CITY OF GARDNER,

Defendant.

THE DEPOSITION OF
KATIE ASBURY,

produced, sworn and examined on the part of the Defendant, pursuant to Notice of Deposition on July 26, 2017, at KU School of Medicine, Founders Room, 1010 N. Kansas Street, in the City of Wichita, in the County of Sedgwick, and State of Kansas, before me,

BRENT W. CHRISTOPHER
(Mo) CCR NO. 883 - (Ks) CCR NO. 1193
of
CHRISTOPHER VIDEO & REPORTING

a Certified Court Reporter in and for the States of Missouri and Kansas.

APPEARANCES:

For Plaintiff:

WALTERS, BENDER, STROHBEHN & VAUGHAN, P.C.
2500 City Center Square
1100 Main Street
Kansas City, Missouri 64105
816-421-6620
dhubbard@wbsvalw.com
By: Mr. Dirk L. Hubbard

For Defendant:

ENSZ & JESTER, P.C.
2121 City Center Square
1100 Main Street
Kansas City, Missouri 64105
816.474.8010
cnapolitano@enszjester.com
By: Mr. Christopher M. Napolitano

***

I N D E X


| | Page |
|---|---|
| Examination by Mr. Napolitano | 3 |
| Examination by Mr. Hubbard | 72 |
| Examination by Mr. Napolitano | 76 |
| Examination by Mr. Hubbard | 77 |
| Signature Page | 80 |
| Reporter's Certificate | 82 |


***

| Exhibit No. | Idfd |
|---|---|
| 200 - | 32 |
| 201 - | 50 |

(Exhibits are attached.)

(The deposition commenced at 1:38 p.m.)

KATIE ASBURY,

of lawful age, after having been first duly sworn to tell the truth, the whole truth, and nothing but the truth, testified as follows:

EXAMINATION

BY MR. NAPOLITANO:

Q. Could you please state and spell your name for the record?

A. Katie Asbury, K-A-T-I-E, A-S-B-U-R-Y.

Q. Are there any other names that you've gone by in the past?

A. My maiden name is Tunison, T-U-N-I-S-O-N.

Q. Are those the only two last names you've been known by?

A. Yes.

Q. What's your date of birth?

A. [redacted]85.

Q. And home address?

A. [redacted]

Q. I know we're on video, so it might seem like a silly question but you're Caucasian, correct?

A. Yes.

never heard Cheryl Harrison-Lee make or say anything that you believed was discriminatory based on race, did you?

A. No.

Q. And again during your employment with the City of Gardner after Cheryl Harrison-Lee started, you never heard her say anything that you believe was discriminatory based on age, did you?

A. No.

Q. Did Cheryl Harrison-Lee ever discuss Mary Bush's job performance with you?

A. Not that I recall.

Q. Is that something you think you would remember?

A. Yes.

Q. I want to talk now about Mary and Cheryl's relationship a little bit.

A. Okay.

Q. And it's my understanding Cheryl started in July of 2012. Is that to the best of your memory, too?

A. Yes.

Q. When Cheryl first started, would you agree with the statement that Mary was her go-to

person?

MR. HUBBARD: Object to form.

A. Yes.

BY MR. NAPOLITANO:

Q. Okay. And what makes you agree with that statement?

A. I --

MR. HUBBARD: Same objection.

A. I think for one, they were -- offices were right next door to each other so it was convenient, and HR is a great connection to the rest of the city. She basically knew every single employee so that was, you know, an easy person to go to to know who she needed to talk to and ask for anything.

BY MR. NAPOLITANO:

Q. Did Cheryl and Mary get along well when Cheryl first started?

A. I believe so.

Q. When Cheryl first started, did you observe any issues she had with other employees other than Mary?

A. No. Besides just basic growing pains of a new administrator.

Q. And were you in close -- did you work in

that they would bring in someone and put her -- put him or her above Mary.

BY MR. NAPOLITANO:

Q. Did you have any conversations with Mary about that new HR position being above her?

MR. HUBBARD: Object to form.

A. I don't -- I don't recall.

BY MR. NAPOLITANO:

Q. Did Mary ever indicate to you whether she wanted to be considered for that position?

A. I don't believe so.

Q. Did Mary ever express concern to you about her job?

MR. HUBBARD: Object to form.

A. Yes.

BY MR. NAPOLITANO:

Q. What did she say?

A. That --

MR. HUBBARD: Same objection.

A. That she I think was worried about, you know, her viability in staying there and that she felt that Cheryl didn't like her at a certain point and that she was worried about getting fired.

BY MR. NAPOLITANO:

Q. And was this around the same timeframe that you saw their relationship change?

MR. HUBBARD: Same objection. Object to form.

A. It was a little bit after that.

BY MR. NAPOLITANO:

Q. A little bit after that? How much longer?

MR. HUBBARD: Object to form.

BY MR. NAPOLITANO:

Q. If you can recall.

A. I would say early, so if that was in the fall, probably a year later was when it was getting pretty bad, about the time I was about to leave because if I hadn't been moving, I probably would have left already.

Q. And I just want to make sure I understand: A year later after the change in -- or change in the relationship?

A. Yes.

MR. HUBBARD: Object to form.

BY MR. NAPOLITANO:

Q. So that would have been the fall of 2015?

MR. HUBBARD: Object to form.

BY MR. NAPOLITANO:

Q. A year later?

A. Yeah.

Q. But you and Mary --

A. Well --

Q. I just want to make sure your timeline is -- your remembering because you would have both been gone in the fall of 2015, right?

MR. HUBBARD: Same objection. Object to form. Speculation, vague and ambiguous. I think we can see the witness isn't recalling timeframes correctly.

A. Yeah, it's -- it's been a long time since I've been there, so I would -- it was like spring when I was leaving, winter/spring when I was leaving that's when it was getting contentious, I'd say.

BY MR. NAPOLITANO:

Q. And we can agree that you left in March of 2015, right?

A. Yes.

Q. So it was getting contentious in the winter of 2014?

A. Correct.

MR. HUBBARD: Object to form.

Misstates witness's prior testimony. Also object as vague and ambiguous, speculation.

BY MR. NAPOLITANO:

Q. And was it around that same timeframe that Mary expressed the concerns you just described?

MR. HUBBARD: Same objection. Object to form.

A. I don't thoroughly recall when the -- when the recruitment process was for that other HR position. I was leaving and I wasn't really involved in that -- in that new person coming on.

BY MR. NAPOLITANO:

Q. So did she express those concerns you described during the recruitment of the HR supervisor position?

MR. HUBBARD: Same objection.

A. No, it would have been during the budget process and when they created the position.

BY MR. NAPOLITANO:

Q. Okay.

A. Because I wasn't there, at least not that I remember, for that recruitment process. It could have been happening while I was there, but I probably didn't have much of a hand in it

We had an outside firm come in and was running our IT for us.

BY MR. NAPOLITANO:

Q. You didn't know Mary Bush to have any IT expertise, did you?

A. No.

Q. Are you doing okay? You need a break?

A. We can go a little longer.

Q. Okay. During your time working at the city after Cheryl Harrison-Lee started, Mary Beth Bush never told you that she felt she was being disseminated against on the basis of her age, did she?

A. No.

Q. And she never told you that she felt she was being discriminated against on the basis of her race; is that right?

A. Correct.

Q. And you never made any complaints of discrimination, right?

A. Not of discrimination. I did forward an incident to Mary Bush that I believe you guys have a copy of my e-mail thread on.

(Deposition Exhibit Number 201 was marked for identification.)