## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**Mary Beth Bush,**

**Plaintiff,**

**v.**                                    **Case No. 16-cv-2675-JWL**

**City of Gardner,**

**Defendant.**

### <u>MEMORANDUM & ORDER</u>

Plaintiff filed this lawsuit against her former employer, the City of Gardner, Kansas, alleging that the City eliminated plaintiff's position on the basis of her age, race and/or in retaliation for plaintiff's engaging in protected activity in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq; 42 U.S.C. § 1981; and the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq.  This matter is presently before the court on the City's motion for summary judgment (doc. 80).  As will be explained, the motion is granted with respect to plaintiff's race discrimination claim and is otherwise denied.


**I.     Facts**

The following facts are uncontroverted, stipulated in the pretrial order, or related in the light most favorable to plaintiff as the nonmoving party.  The City of Gardner, Kansas is a municipal corporation governed by a five-member City Council presided over by a Mayor. Plaintiff Mary Beth Bush, a Caucasian female, began her employment with the City of Gardner

in October 2006 when she was hired as the Human Resources Manager.  The first several years of plaintiff's employment passed without incident.

In July 2012, Cheryl Harrison-Lee, an African-American female, became the City Administrator.  As the City Administrator, Ms. Harrison-Lee served as the chief administrative assistant to the Mayor and the administrative officer of the City's government.  Ms. Harrison-Lee and plaintiff enjoyed a good working relationship at the start of Ms. Harrison-Lee's employment as the City Administrator.  In January 2013, the City created a new position, Administrative Services Manager (ASM), which was responsible for managing Human Resources, Risk Management, Information Technology, Buildings and Maintenance, and the City Clerk.  Plaintiff was promoted to the position and received a significant increase in salary. At that time, plaintiff was almost 55 years old.  In April 2013, Chris Morrow became the Mayor of the City of Gardner.  Ms. Harrison-Lee completed a 2013 performance evaluation for plaintiff indicating that plaintiff's performance as the ASM exceeded expectations.

The City contends that Ms. Harrison-Lee, in 2014, began having concerns about plaintiff's performance and plaintiff's lack of a college degree.  In June 2014, plaintiff and Ms. Harrison-Lee attended a comprehensive Human Resources conference in Florida.  According to the City, Ms. Harrison-Lee realized during the conference that plaintiff did not have a sufficient understanding of current best practices in human resources and lacked the requisite education to succeed in the ASM role.  The City asserts that Ms. Harrison-Lee knew by June 2014 that it would be difficult for the City to continue with plaintiff as the ASM and that Ms. Harrison-Lee decided to proceed towards eliminating the ASM position.  Nonetheless, the 2015 budget, which was approved in August 2014, included funding for the ASM position.  The budget also

included funding for two new positions that would report to the ASM—a Network Administrator position and a Human Resources Supervisor position.

In August 2014, the City received a notice from the United States Department of Labor ("DOL") advising the City that it was going to conduct an audit to determine compliance with the Fair Labor Standards Act. The audit was conducted in response to a former employee's complaint to the DOL regarding unpaid overtime. The DOL determined that the City Clerk position had been misclassified and the City was required to pay overtime wages to the complaining party. The City contends that it was plaintiff's responsibility to ensure that the City Clerk position was correctly classified under the Fair Labor Standards Act, although the evidence reflects that the ultimate responsibility for classification of positions rested with the City Administrator. In any event, Ms. Harrison-Lee was displeased that plaintiff had not properly classified the City Clerk. During this same time frame, Ms. Harrison-Lee discovered that a current employee of the City did not have the education credentials that he had indicated on his resume when he applied for employment with the City. Plaintiff had failed to verify the employee's credentials and, apparently, never verified the credentials of any applicant. Plaintiff concedes that Ms. Harrison-Lee was "rightfully" upset with her over this issue.

There is evidence that at some point between November 2014 and mid-January 2015, plaintiff began to fear that her employment as the ASM was at risk. She met with City Council President Kristina Harrison to express concerns that Ms. Harrison-Lee was removing job duties from her; that her working relationship with Ms. Harrison-Lee had changed in a negative way; and that Ms. Harrison-Lee was not communicating with plaintiff on a regular basis. Plaintiff

began updating her resume.   In November 2014, the City began recruiting applicants to fill the Human Resources Supervisor and Network Administrator positions.

In early January 2015, the City hired a 49-year-old Caucasian male as the Network Administrator.   After that hiring decision, plaintiff learned that the Network Administrator would not report to her as outlined in the budget but would instead report directly to Ms. Harrison-Lee.  On January 15, 2015, the City conducted telephone interviews for the Human Resources Supervision position.  During those interviews, plaintiff heard Ms. Harrison-Lee state that the current Human Resources staff did not know what they were doing.  According to the City, Ms. Harrison-Lee was pleased with the quality of applicants for the Human Resources Supervisor position and, after the interviews, determined that the ASM position was no longer necessary and could be eliminated.  The candidate ultimately hired by the City was a Caucasian male who was older than plaintiff.

On Friday, January 23, 2015, Ms. Harrison-Lee, Mayor Morrow and Council President Kristina Harrison discussed the possibility of eliminating the ASM position in light of the newly hired Network Administrator and the available qualified candidates for the Human Resources Supervisor position.  On Monday, January 26, 2015, plaintiff sent an email to Mayor Morrow and Council President Harrison with the subject line "Hostile Work Environment."   In her lengthy complaint, plaintiff stated that Ms. Harrison-Lee had created a hostile work environment with respect to her treatment of plaintiff and City staff.  Plaintiff expressly stated that the creation of a hostile work environment is prohibited under Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act of 1967.  Although the remainder of plaintiff's complaint is devoid of any references to age-based or race-based conduct, plaintiff

4

described Ms. Harrison-Lee's conduct as "rude, ridiculing and demeaning" and stated that Ms. Harrison-Lee created an environment of "fear and intimidation."

Upon receipt of plaintiff's email, Mayor Morrow hired an investigator, Shelly Freeman, to investigate plaintiff's complaint. Ms. Freeman interviewed plaintiff, Ms. Harrison-Lee, and several other City employees before ultimately determining that no hostile work environment existed. On March 2, 2015, Ms. Freeman orally presented her findings to the City Council. On March 6, 2015, Ms. Freeman and the Mayor met with plaintiff and Ms. Harrison-Lee (separately) to explain the findings of the investigation. On March 16, 2015, Ms. Harrison-Lee recommended to the City Council that the ASM position be eliminated. The City Council voted unanimously to eliminate the ASM position. Plaintiff was offered a newly created Special Events Coordinator position at a significantly reduced salary and she declined that offer. At the time her employment ended, plaintiff was 57 years old.

Additional facts will be provided as they relate to the specific arguments raised by the parties in their submissions.

## II.     Summary Judgment Standard

"Summary judgment is appropriate if the pleadings, depositions, other discovery materials, and affidavits demonstrate the absence of a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Water Pik, Inc. v. Med–Systems, Inc.*, 726 F.3d 1136, 1143 (10th Cir. 2013) (quotation omitted); *see* Fed. R. Civ. P. 56(a). A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Water Pik, Inc.*, 726 F.3d at 1143 (quotation omitted). "The nonmoving

party is entitled to all reasonable inferences from the record; but if the nonmovant bears the burden of persuasion on a claim at trial, summary judgment may be warranted if the movant points out a lack of evidence to support an essential element of that claim and the nonmovant cannot identify specific facts that would create a genuine issue." *Id.* at 1143-44.

## III.    Age Discrimination Claim

In the pretrial order, plaintiff asserts that defendant eliminated the ASM position and offered plaintiff the Special Events Coordinator position at a much lower salary based on plaintiff's age.  Plaintiff concedes that she has no direct evidence of discrimination, and her claim is therefore analyzed using the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Bennett v. Windstream Communications, Inc.,*792 F.3d 1261, 1266 (10th Cir. 2015).  Under *McDonnell Douglas*, plaintiff has the initial burden of establishing a prima facie case of discrimination.  *Id.* To set forth a prima facie case of discrimination, plaintiff must establish that she is a member of a protected class, she suffered an adverse employment action, and the challenged action occurred under circumstances giving rise to an inference of discrimination.  *Id.* (citing *EEOC v. PVNF, LLC*, 487 F.3d 790, 800 (10th Cir. 2007)).  If she establishes a prima facie case, the burden shifts to defendant to assert a legitimate, nondiscriminatory reason for the adverse employment action. *Id.*  If defendant meets this burden, summary judgment against plaintiff is warranted unless she introduces evidence "that the stated nondiscriminatory reason is merely a pretext for discriminatory intent."  *Id.* (citing *Simmons v. Sykes Enters.*, 647 F.3d 943, 947 (10th Cir. 2011)).

In its motion for summary judgment, the City contends that it is entitled to summary judgment solely because plaintiff cannot establish a prima facie case of age discrimination. In other words, the City does not reach the issue of pretext in its motion (or, for that matter, in its reply brief) and limits its motion strictly to the evidence concerning plaintiff's prima facie case. In that regard, the City contends that it is entitled to summary judgment because plaintiff cannot establish that she was replaced by a younger person and cannot established that she was performing satisfactory work at the time her position was eliminated. Because the City's arguments concerning plaintiff's prima facie case are based on a misunderstanding of the requisite elements that plaintiff must establish as well as the nature of plaintiff's burden at the prima facie stage—and because the City fails to raise the pretext issue—the City's motion must be denied on this claim.

The City contends that plaintiff cannot establish that she was replaced by a younger person because she was "replaced" by someone seven years older than plaintiff. To begin, factual issues exist as to whether plaintiff was replaced or whether her position was eliminated. Viewing the evidence in the light most favorable to plaintiff, plaintiff's position was eliminated and her duties were redistributed among other positions. Specifically, the evidence reflects that plaintiff's ASM responsibilities were absorbed by the new Human Resources Supervisor position; the new Network Administrator position; the public works department; and the City Administrator herself. The court, then, rejects the argument that plaintiff cannot establish a prima facie case because she was "replaced" by an older person. Because plaintiff's evidence demonstrates that her position was eliminated, she need not establish that she was replaced by a younger person. *See Hinds v. Sprint/United Management Co.*, 523 F.3d 1187, 1195 (10th Cir.

2010).  Moreover, the Tenth Circuit has routinely held that a plaintiff's prima facie burden is "de minimus" and may be satisfied simply by showing that the adverse employment action occurred under circumstances which give rise to an inference of discrimination.  *See Plotke v. White*, 405 F.3d 1092, 1101 (10th Cir. 2005); *Bennett*, 792 F.3d at 1266-67 (burden of production at prima facie stage is "not onerous"); *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 627 (10th Cir. 2012).

The City also contends that plaintiff cannot establish a prima facie case because she cannot demonstrate that she was performing satisfactory work at the time Ms. Harrison-Lee decided to eliminate the ASM position.  This argument is rejected for two reasons.  First, plaintiff is not required to establish that she was performing satisfactory work as part of her prima facie case.  *See Bennett*, 792 F.3d at 1266 (plaintiff must show only that adverse action occurred under circumstances giving rise to an inference of discrimination).  Second, because the City maintains that it eliminated the ASM position in part (if not entirely) because plaintiff was not performing the job to Ms. Harrison-Lee's satisfaction, the argument constitutes an impermissible "end run" around the *McDonnell Douglas* analysis and the court cannot consider it at the prima facie stage.  *See, e.g., EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1192–94 (10th Cir. 2000) (requiring plaintiff to disprove defendant's proffered reason for employment decision to establish prima facie case would inappropriately short circuit *McDonnell Douglas* analysis).

The only other argument asserted by the City in support of its motion for summary judgment on plaintiff's age claim is that the "same actor" inference is sufficient to warrant summary judgment.  That doctrine provides that, when "the employee was hired and fired by the

8

same person within a relatively short time span," there is "a strong inference that the employer's stated reason for acting against the employee is not pretextual." *Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1183 (10th Cir. 2006). As noted earlier, the City does not even reach the pretext analysis in its motion and the court has uncovered no cases applying the "same actor" inference at the prima facie stage. The court refuses to do so in the absence of any authority from the City suggesting that such an approach is appropriate.[1]

In the end, then, plaintiff, for purposes of her prima facie case, need only come forward with evidence that the adverse action occurred under circumstances which give rise to an initial inference of discrimination. This is not an issue that is directly raised in the motion for summary judgment, largely because it is not an element identified in the City's narrow articulation of the prima facie case requirements. Nonetheless, in her response to the motion for summary judgment, plaintiff lists several reasons, with citation to the record, why she believes that the ASM position was eliminated based on her age. The City does not address these reasons in the argument section of its reply brief. It simply reasserts that plaintiff cannot establish a prima facie case of age discrimination because she was replaced by an older

---

[1] The City also states that Ms. Harrison-Lee hired 16 individuals during her tenure as City Administrator and that 10 of those individuals were over the age of 40 at the time of hire. That evidence is not at all persuasive in the absence of evidence concerning the ages of any other applicants for those positions. The City also notes that Ms. Harrison-Lee, who was 52 years old at the time of the elimination decision, is in the same protected class as plaintiff. This fact is not dispositive. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998) (explaining that "[b]ecause of the many facets of human motivation, it would be unwise to presume as a matter of law that human beings of one definable group will not discriminate against other members of their group"). The fact that Ms. Harrison-Lee is in the same protected class, then, would not preclude a finding that the City's stated reasons for eliminating the ASM position are pretextual. This is particularly true where the City Council (rather than Ms. Harrison-Lee) made the decision to elimination the ASM position.

individual.  The City, then, has not satisfied its burden of demonstrating that no material issues of fact remain for trial and that the City is entitled to judgment as a matter of law.  *Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002).  Summary judgment is not appropriate.

## IV.    "Reverse" Race Discrimination

Plaintiff asserts in the pretrial order that defendant eliminated the ASM position and offered plaintiff the Special Events Coordinator position at a much lower salary based on plaintiff's race.  Because plaintiff is Caucasian and does not belong to a protected group on that basis, her prima facie case requires her to establish "background circumstances that support an inference that the defendant is one of those unusual employers who discriminates against the majority."  *Argo v. Blue Cross & Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1201 (10th Cir. 2006).  In its motion for summary judgment, the City argues that plaintiff has failed to establish any such circumstances.  The court agrees and enters summary judgment in favor of the City on this claim.[2]

Plaintiff has failed to establish any circumstances that might justify an inference of reverse race discrimination.  The record reflects that, at all times pertinent to this lawsuit, more than 90 percent of the City's employees were Caucasian.  Plaintiff asserts that Ms. Harrison-Lee, on one occasion, stated a preference for hiring an African-American candidate for an Executive Assistant position despite the fact that the candidate scored below Caucasian

---

[2] A plaintiff asserting reverse race discrimination may also proceed by coming forward with direct evidence (or indirect evidence sufficient to support a reasonable probability) that but for the plaintiff's race the challenged employment decision would not have occurred.  *See Argo*, 452 F.3d at 1201.  Plaintiff has no such evidence in this case and does not suggest that she intends to proceed under this method.

applicants on an objective job test.  But plaintiff concedes that Ms. Harrison-Lee ultimately hired a Caucasian individual for that position.  Such evidence can hardly support an inference that the City discriminates against Caucasian individuals.  Plaintiff further contends that Ms. Harrison-Lee hired an African-American candidate for the Communications Manager position (whom plaintiff concedes was qualified) and "strayed" from City policy by paying that person a significantly higher salary than she was previously earning.  Plaintiff, however, concedes that the salary fell within the salary range for the position and provides no other context for assessing how this action might provide an inference of reverse race discrimination.  She does not suggest, for example, that similarly situated Caucasian employees were hired at lower salaries.  Plaintiff also contends that the City and Ms. Harrison-Lee "brought in young African-American engineering technicians at higher wages than other employees and contrary to other prevailing hiring and pay practices at the City."   Apart from plaintiff's conclusory testimony, however, there is no evidence of any such hiring and defendant's evidence demonstrates that Ms. Harrison-Lee hired only one engineering technician during her tenure and that individual is Caucasian.

Plaintiff argues that her reverse race discrimination claim is supported by a "potentially" race-based remark allegedly made by Ms. Harrison-Lee.  According to plaintiff, Ms. Harrison-Lee, on one occasion, stated as follows:  "I am from the South.  I have to be tough.  I am used to working with white men."  Because plaintiff provides no context whatsoever for that comment, it constitutes, at best, a stray remark under Tenth Circuit precedent and cannot support an inference of discrimination.  *See Hysten v. Burlington N. Santa Fe Ry. Co.*, 415 Fed. Appx. 897, 911 (10th Cir. Mar. 16, 2011) (statements made by decisionmakers unrelated to the decisional

process are "stray remarks" that are insufficient to establish bias). Even assuming that the comment reflects some bias against Caucasian employees, the uncontroverted facts demonstrate that the City Council unanimously voted to eliminate the ASM position and plaintiff does not suggest that any Council members bore any animus against Caucasians. Finally, the court notes that the two individuals hired by Ms. Harrison-Lee to absorb most of plaintiff's responsibilities—the Human Resources Supervisor and the Network Administrator—are both Caucasian. In light of the totality of the circumstances, Ms. Harrison-Lee's remark does not support an inference of reverse race discrimination with respect to the elimination of plaintiff's position.

Because plaintiff has failed to identify any circumstance sufficient to establish a prima facie case of reverse race discrimination, summary judgment is warranted in favor of the City on this claim.

## V.     Retaliation Claim

Finally, plaintiff asserts in the pretrial order that defendant eliminated the ASM position in retaliation for plaintiff's January 26, 2015 complaint that Ms. Harrison-Lee had created a "hostile work environment" for plaintiff and other City staff members. The court assesses plaintiff's retaliation claim under the *McDonnell Douglas* framework. *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 638 (10th Cir. 2012). To state a prima facie case for retaliation, plaintiff "must show (1) she engaged in protected opposition to discrimination, (2) a reasonable employee would have considered the challenged employment action materially adverse, and (3) a causal connection existed between the protected activity and the materially adverse action."

*Id.* (quoting *Hinds v. Sprint/United Mgmt. Co*., 523 F.3d 1187, 1202 (10th Cir. 2008)).   If plaintiff presents a prima facie case of retaliation, then defendant must respond with a legitimate, nonretaliatory reason for the challenged action.   *Debord v. Mercy Health Sys. of Kansas, Inc*., 737 F.3d 642, 656 (10th Cir. 2013).   Plaintiff, then, must show that defendant's stated reason is pretextual.   *Id.*

In its motion for summary judgment, defendant contends that summary judgment is warranted on plaintiff's retaliation claim because plaintiff cannot establish a prima facie case of retaliation.   Specifically, the City contends that the evidence viewed in the light most favorable to plaintiff demonstrates that she did not engage in protected opposition to discrimination because her complaint was not based on an objectively reasonable, good faith belief that the conduct she opposed violated Title VII or the ADEA and, in any event, she cannot establish a causal connection between her January 26, 2015 complaint and the decision to eliminate plaintiff's position.   The City does not assert in its motion that plaintiff has not shown pretext. As will be explained, the court denies summary judgment on plaintiff's retaliation claim in light of material factual issues concerning plaintiff's prima facie case that must be resolved at trial.[3]

A.   *Protected Activity*

---

[3] In its reply brief, the City argues for the first time that even if plaintiff establishes a prima facie case of retaliation, her claim must fail because the City had a legitimate non-retaliatory reason for its decision to eliminate the ASM position and because plaintiff has not come forward with evidence of pretext.   The court cannot consider the City's argument, however, because it was first raised in the City's reply brief and plaintiff did not have the opportunity to respond.   *See Lynch v. Barrett*, 703 F.3d 1153, 1160 n.2 (10th Cir. 2013) (court does not consider arguments raised for the first time in reply brief).

In its motion for summary judgment, the City contends that plaintiff's January 26, 2015 email cannot satisfy the "protected activity" prong of plaintiff's prima facie case because it was not based on an objectively reasonable, good faith belief that the conduct she opposed violated Title VII or the ADEA. *See Hertz v. Luzenac Am., Inc*., 370 F.3d 1014, 1015–16 (10th Cir. 2004) (plaintiff need not prove actual violation of Title VII but only a "reasonable good-faith belief" that the conduct was prohibited by Title VII). The City first challenges the "reasonableness" of plaintiff's belief that Ms. Harrison-Lee was discriminating against employees based on age and/or race. According to the City, it was not objectively reasonable for plaintiff to believe that Ms. Harrison-Lee was discriminating against anyone based on age or race or that she was creating a hostile work environment based on age or race. The City highlights that plaintiff's January 26, 2015 email contains no allegations that Ms. Harrison-Lee's conduct was based on age or race and, in fact, demonstrates that Ms. Harrison-Lee treated all staff members the same regardless of age or race. The City further contends that plaintiff knew or should have known that Ms. Harrison-Lee's hiring practices negated any inference of discrimination on the basis of age or race.

The court agrees that plaintiff's written complaint, aside from plaintiff's reference to Title VII and the ADEA, do not reflect any basis to believe that Ms. Harrison-Lee was engaged in unlawful discrimination on the basis of age or race. Nonetheless, plaintiff's evidence, taken as a whole, is sufficient to permit a jury to believe that plaintiff reasonably, if not accurately, believed that Ms. Harrison-Lee had engaged in discrimination. Toward that end, the evidence reflects that plaintiff shared with Ms. Freeman that Ms. Harrison-Lee had made the comment that "As people get older, they don't think as clearly" and that she "had to be tough" because she

was used to "working with white men."  Plaintiff further provided to the investigator the names of several older, Caucasian employees whom plaintiff believed were subjected to a pattern of discrimination by Ms. Harrison-Lee.  The City contends that much of this evidence is based on hearsay and that Ms. Harrison-Lee hired many of those individuals such that any inference of discrimination is negated.  Because the evidence is offered not to prove the truth of the statements (*e.g.*, that Ms. Harrison-Lee in fact treated individuals differently based on age or race or that older people do not think as clearly) but to demonstrate the reasonableness of plaintiff's belief, the court discerns no hearsay issues.  Moreover, the fact that an inference of discrimination might be negated by additional facts does not render plaintiff's belief unreasonable as a matter of law.  Viewed in the light most favorable to plaintiff, a jury could conclude that a reasonable person with no formal training in the law could have believed that Ms. Harrison-Lee's remarks and her treatment of older, Caucasian employees constituted unlawful discrimination.  The court also notes that the City hired an outside investigator to review plaintiff's discrimination allegations.  The City, then, apparently did not perceive plaintiff's complaints as patently unreasonable.  In short, plaintiff's evidence is sufficient to permit the jury to conclude that plaintiff reasonably believed that Ms. Harrison-Lee's conduct violated federal laws against discrimination in the workplace.

The City also asserts that plaintiff's January 26, 2015 complaint is "likely disingenuous" and was made in an effort to save her job such that she cannot satisfy the "good faith" requirement of the "protected activity" prong.  In support of this argument, the City emphasizes evidence that plaintiff told her spouse during the DOL audit that she feared for her job; that plaintiff told a close friend that she was concerned about her job "several months" before her

position was eliminated; that she was worried about getting fired when the Human Resources Supervisor position was created during the budget process; and that she believed that Ms. Harrison-Lee was "up to something" in the November 2014 through January 2015 timeframe because she stopped responding to plaintiff's work-related questions and treated plaintiff rudely. This evidence is not sufficient to persuade the court that no reasonable jury could consider plaintiff's complaint to have been made in good faith.

While plaintiff was concerned about her performance during the DOL audit, the evidence suggests that any concerns she had were alleviated once the audit was completed to the satisfaction of Ms. Harrison-Lee. And the audit may well be what plaintiff was referencing when she expressed concerns to her close friend—the record does not provide any context for that alleged concern. With respect to her concern about the Human Resources Supervisor position, plaintiff's evidence reflects that the concern was alleviated when the approved budget accounted for plaintiff's position through 2015 and reflected that the Human Resources Supervisor would report to plaintiff. Finally, plaintiff's testimony that she thought that Ms. Harrison-Lee was "up to something" beginning in November 2014 is not sufficient, standing alone, to warrant the conclusion that her January 2015 complaint was "manufactured" to save her job. A reasonable jury could still conclude, even if it believed that plaintiff was concerned about her job, that plaintiff's complaint was made in good faith over a concern that Ms. Harrison-Lee was seeking to eliminate plaintiff's position on the basis of a protected characteristic.[4]

---

[4] The City relies on only one case in support of its "good faith" argument—*Shinwari v. Raytheon Aircraft Co.*, 16 F. Supp.2d 1308 (D. Kan. 1998). In that case, the court found that the "only

B.     *Causal Connection*

The City next asserts that summary judgment is appropriate because plaintiff cannot establish a causal connection between her January 26, 2015 complaint and the City's decision to eliminate the ASM position.[5]  In support of this argument, the City urges that the evidence demonstrates that the elimination decision was made in the summer of 2014, months prior to plaintiff's January 26, 2015 email.  Viewed in the light most favorable to plaintiff, the evidence does not support this contention.  The City directs the court to one interrogatory response in which it asserted that Ms. Harrison Lee "first considered the elimination of the Administrative Services Position in the Spring of 2014 and decided she would work to proceed with the elimination in the later part of June 2014."  The City also cites to evidence that the City, in August 2014, approved the 2015 budget that included funding for a Human Resources Supervisor position and Network Administrator position and that, just prior to the City Council

_____

permissible inference which reasonably flows from this record is that plaintiff manufactured a charge of discrimination to deflect attention from his own performance problems."  While the Circuit ultimately affirmed the grant of summary judgment on the pretext issue, the Circuit found that the plaintiff's evidence supported a good-faith belief that Raytheon was engaged in discrimination.  *Shinwari v. Raytheon Aircraft Co.,* 2000 WL 731782, at *6 (10th Cir. June 8, 2000).  *Shinwari*, then, is not persuasive to the court.

[5] In its motion, the City contends that plaintiff must demonstrate that her complaint was the "but for" cause of her termination under the Supreme Court's decision in *University of Texas Southwestern Medical Center v. Nassar*, 133 S. Ct. 2517 (2013).  However, the Circuit has recognized that *Nassar* has not altered the burden a plaintiff bears in supporting the causation element of a prima facie case of retaliation because *Nassar* was entirely consistent with the Circuit's precedent on that issue. *See Foster v. Mountain Coal Co*., 830 F.3d 1178, 1191 (10th Cir. 2016) (citing *Ward v. Jewell*, 772 F.3d 1199, 1203 (10th Cir. 2014)).  The court, then, rejects any suggestion that *Nassar* imposes a heightened burden on plaintiff at this stage.

meeting in August 2014, Ms. Harrison-Lee told plaintiff to be "prepared" because she believed that the Council was going to demote plaintiff.

Without question, a reasonable jury could conclude that the City had not decided to eliminate the ASM position as of August 2014. As plaintiff highlights, the City Council, in August 2014, approved a budget that included funding for the ASM position through 2015. Moreover, the approved budget and related organizational charts reflect that the new Human Resources Supervisor and Network Administrator would report to the ASM. Contrary to the City's suggestion, then, the fact that the City funded two new positions is not sufficient to demonstrate that the City intended to eliminate the ASM position and replace that position with two newly created positions. With respect to Ms. Harrison-Lee's suggestion that the City Council was going to demote plaintiff, it is uncontroverted that no discussions about the demotion of plaintiff occurred at the August 2014 City Council meeting.

The City also contends that Ms. Harrison-Lee decided to eliminate the ASM position between January 15, 2015 (when the City began telephone interviews with promising candidates for the Human Resources Supervisor position) and January 23, 2015, when Ms. Harrison-Lee, according to her affidavit, met with Council President Harrison and Mayor Morrow to advise them that she wanted to eliminate the ASM position. Ms. Harrison-Lee avers that she told Ms. Harrison and Mayor Morrow that the ASM position was no longer necessary in light of the fact that the Network Administrator was reporting directly to Ms. Harrison-Lee and the Human Resources Supervisor candidates were highly qualified and could oversee all HR functions. Citing *Clark County School District v. Breeden*, 532 U.S. 268 (2001), the City thus argues that it

simply carried out a previously contemplated decision when it formally eliminated the ASM position in March 2015, thus disproving plaintiff's causation evidence.

In *Breeden*, the Supreme Court considered whether an employee could maintain a Title VII retaliation claim when the employee engaged in protected activity and was transferred to another position shortly thereafter.  *Id.* at 272.  The employee's sole evidence of causation was the temporal proximity between her protected activity and the adverse employment action.  *Id.* The employee's supervisor, however, had mentioned contemplating the potential transfer before the supervisor ever learned of the employee's lawsuit.  *Id.* at 271–72.  The Supreme Court concluded that "[e]mployers need not suspend previously planned transfers upon discovering that a Title VII suit has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality."  *Id.* at 272.

*Breeden* is not persuasive to the court.  In that case, the plaintiff's supervisor expressly contemplated the transfer prior to learning about the plaintiff's lawsuit and then carried out the transfer one month later.  The plaintiff's supervisor was the sole decisionmaker in *Breeden*.  In this case, Ms. Harrison-Lee apparently contemplated the elimination of the ASM decision prior to plaintiff's January 26, 2015 email and she mentioned that idea on January 23, 2015 to Mayor Morrow and Ms. Harrison.  But Ms. Harrison-Lee, unlike the supervisor in *Breeden*, had no authority to make the elimination decision—only the City Council had the authority to do so. There is no evidence in the record as to whether any other members of the City Council were contemplating the elimination of the ASM position prior to plaintiff's email.  Significantly, Ms. Harrison-Lee did not recommend the elimination of the ASM position to the City Council as a whole until after plaintiff's January 26, 2015 email.  And the City Council, on March 16, 2015,

19

unanimously voted to eliminate the position just two weeks after Ms. Freeman reported to the City Council on the outcome of her investigation into plaintiff's complaint.

The City relies on two other cases in support of its causation argument.  Both are easily distinguished from the factual context of this case and not persuasive to the court.  In *Sabourin v. University of Utah*, 676 F.3d 950 (10th Cir. 2012), the Circuit rejected the plaintiff's retaliation claim because the plaintiff's supervisor had decided to eliminate the plaintiff's position in a reduction-in-force before she learned that the plaintiff intended to take FMLA leave.  *Id*. at 958.  That case is different because the undisputed facts revealed that the supervisor had "unequivocally" already made the elimination decision prior to the plaintiff's protected activity and had established a specific date for the scheduled elimination.  *Id*. at 959.  By contrast, the City Council made no decision in this case until after plaintiff's January 26, 2015 email.  In *Sunderman v. Westar Energy, Inc*., 307 Fed. Appx. 224 (10th Cir. Jan. 14, 2009), the pertinent decisionmakers, prior to the plaintiff's protected activity, had already had numerous, specific meetings about a reorganization that ultimately resulted in the elimination of the plaintiff's position.  *Id*. at 228.  The reorganization process was well under way by the time the plaintiff filed an administrative charge.  *See id*.  Here, there is no evidence that the City Council contemplated the elimination of the ASM position until after plaintiff's January 26, 2015 email.  For these reasons, the cases on which the City relies do not advance its arguments on summary judgment.

A jury, then, must decide whether the City Council was simply "proceeding along lines previously contemplated" when it eliminated the ASM position.  If the jury concludes that the elimination decision had not been previously contemplated by the City Council, then the

temporal proximity between plaintiff's complaint and the elimination decision is close enough to establish the requisite causal connection for purposes of plaintiff's prima facie case.  Summary judgment must be denied.  *See Conroy v. Vilsack*, 707 F.3d 1163, 1181-82 (10th Cir. 2013) (temporal proximity of one-and-a-half months establishes causation).


**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for summary judgment (doc. 80) is granted in part and denied in part.


**IT IS SO ORDERED.**


Dated this 1st day of December, 2017, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge